UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| Acuity Mutual Insurance Co., Assignee of Shelly and Sands, Inc., | ) ) ) | |
| Plaintiff, | ) ) | 1:10-cv-00239-SEB-WGH |
| vs. | ) ) ) | |
| T&R Pavement Markings, Inc., and Highway Technologies, Inc., as Successor In Interest to T&R Pavement Markings, Inc., | | |
| Defendants. | | |

**ORDER**

This cause is before the Court on motions for summary judgment [Docket Nos. 43, 45, 54] filed on behalf of all three parties, Defendant T&R Pavement Markings, Inc. ("T&R"), Defendant Highway Technologies, Inc. ("HTI"), and Plaintiff Acuity Mutual Insurance Company ("Acuity"). For the reasons detailed herein, T&R is dismissed from this lawsuit and, thus, its motion [Docket No. 43] is <u>DENIED AS MOOT</u>, HTI's motion is <u>DENIED</u>, and Acuity's motion is <u>GRANTED</u>.

**Factual Background**

In 2006, the Indiana Department of Transportation chose Shelly and Sands, Inc. ("Shelly") as the general contractor to perform certain construction work on I-465. Shelly

entered into subcontracts with both Schutt-Lookabill, Co., Inc. ("Schutt") and T&R.[1]  HTI Ex. 20, Exs. A, C.  Pursuant to the contract between Shelly and Schutt (the "Schutt Contract"), Schutt performed bridge patching and joint repair work on the I-465 project. Pursuant to the contract between Shelly and T&R (the "T&R Contract"), T&R provided barricades, signs, and other materials necessary to warn motorists traveling through the construction area of the existence of work being done there.  Both contracts contained a "Coordination" provision that read as follows: "Subcontractor shall coordinate his operations with all other trades having work in the same area of the project."  HTI Ex. 20, Exs. A, C.

At times, in order to perform its work on the Shelly project, Schutt needed more signs and barricades than T&R had given to Shelly.  Kennedy Aff. ¶ 6.  When such shortages occurred on various projects, Schutt obtained the additional barricades and signs from T&R.  Kennedy Aff. ¶ 7.  Schutt and T&R entered into a purchase agreement that covered the additional signage but their purchase agreement contained no indemnity provision.  T&R Br. at 3. Schutt President (and former Vice-President) Edward Kennedy testified that "the sole reason that Schutt asked T&R to provide its required barricades and signage was because T&R was already working on the I-465 project as an approved subcontractor for Shelly under [the T&R Contract] and would be present on the jobsite in

---

[1]T&R merged with HTI and ceased to exist as a separate entity at some point prior to the death of Soots, a former employee of T&R whose death gave rise to the claims at issue here, but before this case was filed.  HTI Ex. 19, Certificate of Merger.

that capacity." Kennedy Aff. ¶ 8.

This lawsuit arose out of the unfortunate death of Jason Soots, a former T&R employee, as a result of injuries he sustained after falling from a trailer while moving signs from one Schutt work location to another. HTI Br. at 2; T&R Br. at 4; Acuity Br. at 4-5. Mr. Soots's wife, Rose, brought a wrongful death claim against Shelly and Schutt in the Marion County Superior Court No. 11, Cause # 49D11-0803-CT-010479 (the "Underlying Litigation"). The jury in the Underlying Litigation entered a verdict assigning the following percentages of fault that contributed to Soots's death as follows: Soots (20%); Shelly (41%); and Schutt (39%). A $4,182,000 judgment was entered in favor of the Soots estate.

According to the Schutt Contract, Schutt agreed to indemnify Shelly. HTI Ex. 20, Ex. C. Thus, Acuity (Schutt's insurer) paid the sum of $2,460,000 to obtain a release of the judgment against Shelly. Shelly assigned "to Acuity all of its rights to indemnification against T&R contained in the T&R Contract and more specifically set forth in paragraph 27 of the T&R Contract as it relates to Soots and the Underlying Litigation." HTI Ex. 20, Ex. B.

The T&R Contract contained the following indemnity provision:

> (A) To the fullest extent permitted by law, [T&R] shall indemnify and hold harmless [Shelly] and all its agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from [T&R]'s performance under this Subcontract and [T&R] shall defend [Shelly] against any claim, damages, suits, losses or expenses including, but not limited to, those that are (1)

> attributable to bodily injury, sickness, disease, death or injury to or destruction of tangible property (including the work itself) including the loss of use resulting therefrom and/or (2) caused in whole or in part by negligent act or omission of [T&R] may be responsible, regardless of whether such is caused in part or in full by a party indemnified hereunder. This indemnity clause specifically applies to negligence claims and indemnifies [Shelly] even for [Shelly's] own negligence unless the claim, damage, loss or expense arises solely and only from conduct or negligence by [Shelly].

Thus, through the instant lawsuit, Acuity seeks to enforce the rights to indemnification it claims it possesses against T&R.

## Legal Analysis

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Because the parties have filed cross-motions for summary judgment, we stress that the same Rule 56 standards apply, and our review of the record requires us to draw all inferences in favor of the party against whom a particular issue in the motion under consideration is asserted. See O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001) (citing Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 692 (7th Cir. 1998)).

The parties agree on all of the facts as well as the ultimate legal issues currently pending before the Court: (1) whether T&R is a suable entity in light of its merger with HTI; (2) whether the indemnification provision in the contract between Shelly and Sands, Inc. ("Shelly") and T&R requires T&R (or its successor in interest, HTI) to indemnify Shelly for any portion of the verdict entered in favor of the Soots estate; and (3) whether T&R is excused from indemnification because "the claim damage, loss or expense" for which Acuity seeks to recover "arises solely and only from conduct or negligence by [Shelly]." We consider each of these issues below.

I.      **The Effect of the T&R/HTI Merger on T&R's Capacity to be Sued**

T&R maintains that, as a result of its merger with HTI (as evidenced by the certificate of merger signed August 27, 2007 and designated as evidence by HTI), it is not a legal entity that can be sued pursuant to Fed. R. Civ. P. 17(b) and Indiana law.[2] In support, T&R cites IND. CODE 23-1-40-6, which provides:

> Sec. 6. (a) When a merger takes effect:
>
> (1) every other corporation party to the merger merges into the surviving corporation and the separate existence of every corporation except the surviving corporation ceases;
>
> (2) the title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment;

---

[2]Fed. R. Civ. P. 17(b) provides that a corporation's capacity to be sued is generally determined "by the law of the state where the court is located."

> (3) the surviving corporation has all liabilities of each
> corporation party to the merger;
>
> (4) a proceeding pending against any corporation party to the
> merger may be continued as if the merger did not occur or
> the surviving corporation may be substituted in the
> proceeding for the corporation whose existence ceased;
>
> (5) the articles of incorporation of the surviving corporation are
> amended to the extent provided in the plan of merger; and
>
> (6) the shares of each corporation party to the merger that are
> to be converted into shares, obligations, or other securities
> of the surviving or any other corporation or into cash or
> other property are converted and the former holders of the shares are
> entitled only to the rights provided in the articles of merger or to their rights
> under IC 23-1-44.
>
> (b) When a share exchange takes effect, the shares of each acquired
> corporation are exchanged as provided in the plan and the former holders of
> the shares are entitled only to the exchange rights provided in the articles of
> share exchange or to their rights under IC 23-1-44.
>
> c) After a merger or share exchange takes effect as provided in this section,
> any terms of the plan of merger or plan of share exchange that are not
> included in the articles of incorporation shall be considered to be contract
> rights only, and not part of the governing documents of the corporation.

IND. CODE 23-1-40-6. Furthermore, T&R points out that it is well-settled under Indiana law that, following a merger, the new corporation (in this case, HTI) assumes liability for the obligations of the now non-existent corporation. See Knightstown Lake Property Owners Ass'n, Inc. v. Big Blue River Conservancy Dist., 383 N.E.2d 361, 366 (Ind. App. 1978); Yantiss v. Osborn, 102 Ind. App. 249, 254 (Ind. App. 1935); Cleveland, C., C & St. L.R. Co v. Prewitt, 33 N.E. 367 (Ind. 1893). HTI does not dispute T&R's position.

Acuity requests, however, that the Court refrain from dismissing T&R "until such

time as Acuity is able to ascertain that the dismissal of T&R will not affect its right to collect any judgment entered in favor of Acuity from any insurance company that issued a policy to T&R prior to the effective date of the merger." Acuity Br. at 18-19. It maintains that T&R is a properly named party because there is no supportive authority for the proposition that a merged corporation cannot be sued for a debt created during the non-surviving corporation's existence. Furthermore, Acuity asserts that if T&R is now truly non-existent, then it will not be harmed by remaining a named defendant, whereas Acuity might be harmed if it is unable to collect its judgment against the surviving corporation, HTI. Acuity Br. at 18.

We find Acuity's position in this regard needlessly cautious and entirely unconvincing. First, we are unsure what to make of Acuity's assertion regarding the lack of authority for disallowing a suit against a non-surviving corporation in light of the clear language of IND. CODE 23-1-4-6 which states that "the surviving corporation has all liabilities of each corporation party to the merger" as well as the Indiana caselaw to that same effect. See, e.g., Yantiss v. Osborn, 102 Ind. App. 249, 254 (Ind. App. 1935)("Where a new corporation is formed out of old ones, and the assets of the old ones are turned over to it as a part of its assets, the new or consolidated corporation will be liable for the debts of its constituent corporations to the extent of the property or assets thus acquired, and a creditor may sue the consolidated corporation, reduce his debt to a judgment, and may have execution issue thereon for its collection.")(citations omitted).

In addition, Acuity's "balance of the harms" argument has no place at the

7

summary judgment stage of this litigation. Once a party moving for summary judgment has demonstrated the lack of a genuine issue for trial (as T&R has done here with regard to its capacity to be sued), the responsibility shifts to the non-movant to point to actual evidence of a genuine factual dispute precluding summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Because Indiana law is entirely clear with regard to this issue as is Acuity's corresponding failure to present evidence creating a genuine issue of material fact for trial, we hold that T&R is not a proper party to this lawsuit and is thus entitled to dismissal. Having so determined, throughout the remainder of this entry, although we may refer to T&R for purposes of clarity, it should be understood that all references to responsibility for indemnification by T&R in fact applies only to HTI.

## II. Application of the Indemnification Provision

Next, HTI argues that because it is undisputed that Soots was working pursuant to the purchase order between Schutt and T&R at the time of his accident, as opposed to pursuant to the T&R Contract with Shelly, the indemnity clause included in the latter agreement does not apply here. Acuity concedes that Soots was working pursuant to the Schutt/T&R purchase order at the time of his death, but Acuity maintains that the Soots claim should nevertheless be considered as "arising out of or resulting from [T&R's] performance under [the T&R Contract]." Acuity Br. at 6. Acuity maintains that because T&R would not have entered into the purchase agreement with Schutt but for the contractual relationship between Shelly and T&R, the purchase agreement should be deemed to have arisen out of the T&R Contract.

8

Indemnity agreements are governed by the law of contracts, State v. Daily Express, Inc., 465 N.E.2d 764, 767 (Ind. App. 1984), and are to be construed and interpreted accordingly. Zebrowski & Assoc. v. Indianapolis, 457 N.E.2d 259, 261 (Ind. App. 1983). When the terms of a contract are unambiguous, the meaning of those terms is a question of law for the court to decide. Fort Wayne Cablevision v. Indiana & Michigan Electric Co., 443 N.E.2d 863, 867 (Ind. App. 1983). When the contract's language is plain as to the parties' intent, that language governs. Id. It is the indemnitee's burden to prove entitlement to indemnification under the terms of an existing contract. Zebrowski & Assoc., 457 N.E.2d at 262.

Neither party points to any Indiana caselaw in support of its respective position. Instead, Acuity urges the Court to adopt the reasoning of three cases from state courts of Alaska, New Jersey, and Maryland, which Acuity maintains are analogous. HTI rejoins that the cases cited by Acuity are each distinguishable and that adopting the interpretation urged by Acuity would be contrary to Indiana law, which dictates that indemnity agreements are to be strictly construed. ICMC v. MAV, Inc., 915 N.E.2d 101 (Ind. App. 2009)("Indemnification clauses are not void as against public policy, **though they will be strictly construed**, and the intent to indemnify the indemnitee for its own negligence must be stated in clear and unequivocal terms.") (emphasis added).

Although our research has uncovered no case with precisely analogous facts to those in the case at bar, Indiana law is clear that "use of words such as 'growing out of the performance of this order' or 'resulting from or arising in connection with' in

indemnification agreements is evidence that the parties intended the indemnity agreement to provide broad protection." Allied-Signal, Inc. v. Acme Service Corp., 1992 U.S. Dist. LEXIS 9690, at *18-19 (N.D. Ind. May 8, 1992) (Miller, J.)(citing Fort Wayne Cablevision v. Indiana & Michigan Electric Co., 443 N.E.2d 863, 866 (Ind. App. 1983); see also Indemnity Ins. Co. v. Koontz-Wagner Electric Co., 233 F.2d 380, 383 (7th Cir. 1956).

In Allied-Signal, Inc., the plaintiff corporation entered into an agreement with the defendant subcontractor pursuant to which the latter was to provide certain custodial and housekeeping services. 1992 U.S. Dist. LEXIS 9690 at *2. The agreement between the parties contained an indemnification provision requiring the subcontractor to indemnify the corporation from "all liability, demands, claims, loss, cost, damage and expense by reason or on account of property damage, death and personal injury of whatsoever nature or kind arising out of, as a result of, or in connection with the performance of this order which is occasioned by the actions or omissions of seller or its suppliers. . . ." Id. The corporation brought an indemnity action against the subcontractor after it incurred legal costs in defending itself in a negligence action brought by a former employee of the corporation who had worked for the subcontractor at the time of the accident. The subcontractor argued that "the tort law principles of proximate cause and foreseeability [were] implied within the indemnity agreement." Id. at *17. The District Court disagreed, explaining that the language of the indemnity provision evidenced a broad interpretation of the subcontractor's obligations. Id. at *19. Thus, the Court found that

the corporation was entitled to indemnity by the subcontractor if it could be shown that the corporation's loss was "caused – indirectly or proximately – by an act or omission of [the subcontractor]." Id. at 22.

Similarly, in Ft. Wayne Cablevision, a cable company and an electric company entered into a written contract allowing the cable company to attach its equipment and lines to the electric company's utility poles. 443 N.E.2d 863, 864. An employee from a third party company, while attaching the cables to the utility poles, was injured. After a determination that the employee's accident was the result of the rotted condition of the utility pole, the employee brought suit against the electric company, who impleaded the cable company as a third party defendant based on the indemnification provision in the contract between those entities. The indemnity provision provided that the cable company agreed to "indemnify, hold harmless, and defend Owner from and against any and all actions or causes of action, claims, demands, liabilities, loss, damage or expense of whatsoever kind and nature, including attorneys' fees, which [the electric company] may suffer or incur by reason of bodily injury, including death, to any person or persons, or by reason of damage to or destruction of any property, including the loss of use thereof, arising out of or in any manner connected with the facilities of [the cable company] to be installed hereunder." Id. The cable company argued that "facilities" did not include the rotted utility pole, which caused the employee's injury. Id. at 865. The Indiana Court of Appeals disagreed explaining that phrases such as "arising out of or in any manner connected with" provide evidence of broad indemnity protection and that

because the cable company's equipment could not function until attached to the utility poles, the provision covered the type of injury suffered by the employee. Id. (adopting the reasoning of Indemnity Insurance Co. v. Koontz-Wagner Elec. Co., 233 F.2d 380, 382-83 (7th Cir. 1956)).

In the case before us, we conclude that the "arising out of or resulting from" language included by the parties in the T&R Contract evidences the same intention of broad indemnity protection similar to the provisions in Allied Signal, Inc. and Ft. Wayne Cablevision. As Acuity points out, if T&R had intended to avoid responsibility for indemnification except in situations in which it was specifically performing work under the contract (as opposed to having arisen out of it or resulted from), T&R would surely have insisted upon such language in the agreement. See Estate of Williams v. Southern Indiana Gas & Electric Co., Inc., 551 F. Supp. 2d 751 (S.D. Ind. 2008 ("If the parties had intended to limit the scope of time during which the indemnity provision was in force and effect, they could have done so . . . .") (Barker, J.) Thus, we hold that the Soots's claim is of the type contemplated in and referenced by the indemnification provision of the T&R Contract.

In addition, we reject HTI's argument that the Court must construe the indemnity provision against Shelly based on Shelly's having been both the indemnitee and the drafter of the contract. "A court does not construe the terms of a contract unless they are ambiguous." Ft. Wayne Cablevision, 443 N.E.2d at 866. Because we have determined that the indemnification provision at issue here was unambiguous, no judicial

construction is necessary and we merely apply the provision as the parties intended and expressed in their agreement. Piskorowski v. Shell Oil Co., 403 N.E.2d 838, 846 (Ind. Ct. App. 1980).

### III. Application of the Exclusion for Shelly's Sole Negligence Provision

As quoted above, the T&R Contract's indemnification provision contains the following provision:

> This indemnity clause specifically applies to negligence claims and indemnifies [Shelly] even for [Shelly's] own negligence unless the claim, damage, loss or expense arises solely and only from conduct or negligence by [Shelly].

HTI contends that the judgment entered against Shelly as a result of the jury's determination that it was at 41% fault arose "solely and only" from Shelly's own negligence and that the indemnification provision, therefore, does not apply. Acuity rejoins that, by definition, a judgment of only 41% fault by its own terms does not constitute negligence "solely and only" on its part.

Both parties rely heavily on the Indiana Supreme Court's decision in Thomson Consumer Electronics, Inc. v. Wabash Valley Refuse Removal, Inc. 682 N.E.2d 792 (Ind. 1997). In Thomson, Wabash Valley waste removal company contracted with Thomson electronics company ("the customer") to provide dumpsters and remove refuse from Thomson's plant. The contract contained an indemnification provision requiring the waste removal company to "except to the extent that any such injury or damage is due solely and directly to [Thomson's] negligence, . . . indemnify [Thomson] against any loss,

13

claim, damages, liability, expense . . . and cause of action, whatsoever, arising out of any act or omission of [the waste removal company], its agents, employees or subcontractors . . . ." When one of the waste removal company's employees (one Steele) was injured while working at Thomson's plant, Steele brought a personal injury claim against Thomson. Thereafter, Thomson attempted to enforce the indemnification provision by way of a third party claim against the waste removal company. Thomson argued that the indemnification provision applied because Steele's injuries were caused by the concurrent negligence of both Thomson and Steele (and, vicariously, therefore, the waste removal company). The waste removal company argued that because Steele brought no claim against it, there was no issue of concurrent negligence and, thus, the exception to the indemnification provision applied and it did not have to cover Thomson's losses. Both the trial court and the Indiana Court of Appeals agreed with the waste removal company and dismissed the claim. The Court of Appeals explained:

> Any fault attributed to [the defendant] or [the employee] would automatically reduce the damages due from [plaintiff], and [plaintiff] would then compensate [the employee] only for that portion of total fault that resulted from [plaintiff's] negligence. The indemnity clause of the contract precludes indemnity for losses resulting from [plaintiff's] sole fault. Under the fault allocation set forth in [Ind. Code 34-4-33-1, et. seq] however, [the plaintiff] can only be held responsible for that portion of the total fault which it alone bears. Thus, the indemnity clause itself precludes indemnity where [the plaintiff] and [the defendant] are concurrently negligent.

Thomson, 658 N.E.2d at 95. Although the Indiana Supreme Court stated that it would have agreed with the Court of Appeals's reasoning if the indemnification provision unambiguously precluded "indemnity for losses resulting from [the plaintiff's] sole fault,"

the high court vacated the dismissal and remanded the case, based on ambiguities in the phrase, "except to the extent that any such injury or damage is due solely and directly to [Thomson's negligence]." That provision could be read (as it was by the trial court and the Court of Appeals) either to preclude indemnity where any portion of the damage is the fault of the Thomson or to preclude indemnification only if Thomson's negligence was the sole proximate cause of the injury, meaning that Thomson could recover only if Thomson's negligence was not the sole proximate cause of Steele's injuries.

Our analysis of the indemnification provision in the T&R Contract might bring us to a similar conclusion as that reached in <u>Thomson</u>, to wit, that it is subject to two possible interpretations but for the clause that precedes that language which states, "This indemnity clause specifically applies to negligence claims and indemnifies [Shelly] even for [Shelly's] own negligence . . . ." To give full effect to that clause, as we must, <u>see Mid-States Gen. & Mech. Contracting Corp. v. Town of Goodland</u>, 811 N.E.2d 425, 431 (Ind. Ct. App. 2004), there must be some way in which Shelly could be entitled to indemnity for its own negligence.[3] It is entirely unclear to us, under HTI's interpretation,

---

[3]"In Indiana, a party may contract to indemnify itself against its own negligence only if the other party knowingly and willingly agrees to indemnify. Such provisions are strictly construed, however, and will not be held to provide indemnity unless so expressed in clear and unequivocal terms. Courts disfavor such indemnification clauses because to obligate one party to pay for the negligence of the other party is a harsh burden which a party would not lightly accept. The concern with the language of an indemnity clause in this area is that it not only define the area of application, that is, negligence, but also define the cause of damages in terms of physical or legal responsibility, that is, to whom the clause applies. For this reason, the language of the indemnification clause must reflect the indemnitor's knowing and willing acceptance of the burden and must express the burden in clear and unequivocal terms." Moore
(continued...)

15

how Shelly would ever be entitled to indemnity for its own negligence (as the provision clearly provides for), if not for instances in which some portion of fault is attributable to Shelly. If Shelly were the only defendant in the Underlying Litigation and was found to be 100% negligent, then the indemnification provision would not apply under either party's interpretation. The addition of parties bearing some portion of the fault changes that effect under Shelly's interpretation, but effectuates no change if we accept HTI's interpretation of the provision. Under that reading, whether Shelly was determined to be 1% or 99% at fault, T&R would be under no obligation to provide indemnification to Shelly because Shelly would never be liable for anything more than its sole negligence. Thus, unlike the provision in <u>Thomson</u>, we find that the indemnification exclusion provision in the T&R Contract precludes indemnification where Shelly's own negligence was the sole proximate cause of the injury.

## Conclusion

For the reasons detailed herein, Shelly's motion for summary judgment is <u>GRANTED</u>, HTI's motion for summary judgment is <u>DENIED</u>, and T&R is dismissed from this lawsuit. Accordingly, T&R's motion for summary judgment is <u>DENIED AS</u>

---

[3](...continued)
<u>Heating & Plumbing, Inc. v. Huber, Hunt & Nichols</u>, 583 N.E.2d 142, 145-46 (Ind. Ct. App. 1991).
    In the case before us, however, the indemnity provision clearly obliges T&R to indemnify Shelly for negligence claims and "even for [Shelly's] own negligence." Thus, there is no question that T&R intended to take on that weighty responsibility.

MOOT. Final judgment in favor of Shelly as against HTI shall enter accordingly.

IT IS SO ORDERED.

Date: ___06/21/2011___                                    _____*signature*_____
                                                           SARAH EVANS BARKER, JUDGE
                                                           United States District Court
                                                           Southern District of Indiana

Copies to:

James H. Austen
STARR AUSTEN MYERS & MILLER, LLP
austen@starrausten.com

Matthew B. Barr
BARNES & THORNBURG LLP
mbarr@btlaw.com

William M. Berish
MEILS THOMPSON DIETZ & BERISH
wberish@meilsattorney.com

Joseph C. Chapelle
BARNES & THORNBURG LLP
joe.chapelle@btlaw.com

Ashlie K. Keaton
THRELKELD & ASSOCIATES
akeaton@threlkeld-legal.com

Jeanine R. Kerridge
BARNES & THORNBURG LLP
jeanine.kerridge@btlaw.com

Rick D. Meils
MEILS THOMPSON DIETZ & BERISH
rmeils@meilsattorney.com

W. Brent Threlkeld
THRELKELD & ASSOCIATES
brent@threlkeld-legal.com